DESAI LAW FIRM, P.C.
Aashish Y. Desai, Esq. (SBN 187394)
Adrianne De Castro, Esq. (SBN 238930)
3200 Bristol St., Suite 650
Costa Mesa, CA 92626
Telephone: (949) 614-5830
Facsimile: (949) 271-4190
aashish@desai-law.com
adrianne@desai-law.com

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICOLE CORREA, JOHN BALNICKI, on behalf of themselves and all others similarly situated,<br><br>       Plaintiffs,<br><br>v.<br><br>ZILLOW, INC., a Washington Corporation, and DOES 1-10, inclusive,<br><br>       Defendants. | CASE NO.: 8:19-cv-00921-JLS-DFM<br><br>Judge: Hon. Josephine L. Staton<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>**HEARING SCHEDULE**<br><br>DATE:    May 28, 2021<br>TIME:    10:30 am<br>CTRM.:  10A<br>JUDGE:  Josephine L. Staton |

0

**PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND SERVICE AWARD**

# TABLE OF CONTENTS

I.   INTRODUCTION..................................................................................... 1

II.  FACTUAL BACKGROUND ................................................................. 1

   A. Summary of Claims ...................................................................... 1

   B. Preliminary Approval ................................................................... 2

   C. The Notice of Process and the Class' Response ......................... 3

III. THE SETTLEMENT BEFORE THE COURT ............................... 3

   A. Basic Terms of Settlement ........................................................... 3

IV.  ARGUMENT .......................................................................................... 5

   A. Class Action Settlements Are Favored and Should Be Approved
When Fundamentally Fair, Adequate, and Reasonable ........................ 5

      1. There Is a Strong Policy in Favor of Settlements, Particularly in
Employment Discrimination Class Actions.......................................... 5

      2. The Court Need Only Determine Whether the Settlement Is
"Fair as a Whole"................................................................................. 5

      3. The Settlement Should Be Afforded a Strong Presumption
of Fairness ........................................................................................... 6

      4. The Parties' Arm's Length Negotiations, Significant Pre-Settlement
Discovery, and Absence of a Revisionary Clause Support Approval.... 7

      5. Counsel Are Skilled and Seasoned Employment Lawyers ................... 7

      6. No Employees Have Objected to the Settlement ................................. 7

   B. The Settlement Is Fair, Reasonable, and Adequate.................................... 9

      1. The Strength of the Case, and the Risk, Complexity and Duration
Of Further Litigation............................................................................ 9

      2. The Risks of Maintaining Class Status Through Trial ........................ 10

      3. The benefits Provided by the Settlement ............................................ 10

      4. Settlements in other types of employment actions also provide

　ample support ....................................................................... 13

5. The Extent of Discovery and State of the Proceedings ........................ 14

6. The Experience and Views of Counsel................................................ 15

7. The Reaction of the Class Members to the Proposed Settlement ......... 15

V. CONCLUSION ............................................................................ 16

<sub><sup>C</sup>ASES</sub>

*Barbosa v. Cargill Meat Sols. Corp.*,
297 F.R.D. 431 (E.D. Cal. 2013) ................................................................ 6

*Betancourt v. Advantage Hum. Resourcing, Inc.*,
No. 14-cv-01788, 2015 WL 12661922 (N.D. Cal. Aug. 28, 2015) ........... 7

*Bond v. Ferguson Enters.*,
No. 1:09-cv-01662, 2011 WL 284962 (E.D. Cal. Jan. 25, 2011) ............ 10

*Booth v. Strategic Realty Tr. Inc.*,
No. 13-cv-04921, 2015 WL 3957746 (N.D. Cal. June 28, 2015) ............ 14

*Boyd v. Bechtel, Corp.*,
485 F. Supp. 610 (N.D. Cal. 1979) ......................................................... 12

*Chu v. Wells Fargo Invs. LLC*,
No. C 05-4526, 2011 WL 672645 (N.D. Cal. Feb. 15, 2011) ............. 8, 10

*Chu v. Wells Fargo*,
2011 WL 672645 (N.D. Cal. Feb. 6, 2011) ............................................. 15

*Churchill Village, LLC v. General Electric*,
361 F.3d 566, 575 (9th Cir. 2004) ........................................................ 6, 8

*Columbus Drywall & Insulation, Inc. v. Masco Corp.*,
258 F.R.D. 545, 559-60 (N.D. Ga. 2007) ............................................... 14

*Couser v. Comenity Bank*,
125 F. Supp. 3d 1034 (S.D. Cal. 2017) ................................................... 10

*Franco v. Ruiz Food Prods., Inc.*,
No. 1:10–cv–02354, 2012 WL 5941801 (E.D. Cal. Nov. 27, 2012) ......... 8

*Garcia v. Gordon Trucking, Inc.*,
No. 1:10-CV-324, 2012 WL 5364575 (E.D. Cal. Oct. 31, 2012) .............. 8

*Giroux v. Essex Property Tr., Inc.*,
No. 16-cv-01722, 2019 WL 2106587 (N.D. Cal. May 14, 2019) ............ 16

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) ................................................................... 6

*Hanlon v. Chrysler Corp.*,
150 F.3d at 1026 (9th Cir. 1998) .............................................................. 17

*In re Gen. Motors Corp.*, 55 F.3d 768 (3d Cir. 1995) ................................ 7

*In re Hightech Employees Antitrust Litig..*,
No. 11-CV-02509, 2015 5159441(N.D. Cal. Sept. 2, 2015) ................... 13

*In re Mego Fin. Corp. Sec. Litig.*,
213 F.3d 454, 459 (9th Cir. 2000) ..................................................................... 15

*In re Omnivision Techs., Inc.*,
559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2007)..................................................... 8

*In re Tableware Antitrust Litig.*,
484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007)..................................................... 7

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*,
No. 8:10ML 02151, 2013 WL 3224585 (C.D. Cal. July 24, 2013) ..................... 9

*K.H. v. Sec'y of Dep't of Homeland Sec.*,
No. 15-cv-02740, 2018 WL 6606248 (N.D. Cal. Dec. 17, 2018).......................... 12

*Knapp v. Art.com, Inc.*,
283 F. Supp. 3d 823 (N.D. Cal. 2017) ............................................................... 10

*Linney v. Alaska Cellular P'ship*,
151 F.3d 1234, 1238 (9th Cir. 1998)................................................................... 1

*Long v. HBSC USA, Inc.*,
No. 14 Civ. 6233, 2015 WL 5444651 (S.D.N.Y. Sept 11, 2015) ......................... 11

*Marek v. Chesny*,
473 U.S. 1 (1985)................................................................................................ 5

*Martens v. Smith Barney*,
181 F.R.D. 243, 265 (S.D.N.Y. 1998) ................................................................ 11

*Morales v. Steveco, Inc.*,
No. 1:09-cv-704, 2011 WL 5511767 (E.D. Cal. Nov. 10, 2011)...................... 7, 11

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
221 F.R.D. 523 (C.D. Cal. 2004)...................................................................... 7, 16

*Odrick v. UnionBanCal Corp.*,
No. C 10– 5565, 2012 WL 6019495 (N.D. Cal. Dec. 3, 2012)............................. 6

*Officers for Justice v. Civil Serv. Comm'n of S.F.*,
688 F.2d 615, 625 (9th Cir. 1982) ......................................................... 5, 6, 11, 14

*Rodriguez v. El Toro Limited P'ship*, No. 8:16-cv-59-JLS-KES, Dkt. 98, at *7-8
(C.D. Cal. June 26, 2018)................................................................................... 16

*Roe v. Jose Torres L.D. Latin Club Bar, Inc.*,
No. 19-cv-06088,
2020 WL 5074392, (N.D. Cal. Aug. 27, 2020) .................................................... 13

*Stovall-Gusman v. W.W. Granger, Inc.*,
Case No. 13-cv-02540-JD
(N.D. Cal. June 17, 2015) .................................................................................. 13

*Van Ba Ma v. Covidien Holding, Inc.*,
2014 WL 2472316 (C.D. Cal. May 30, 2014)............................................................. 13

*Velez v. Novartis Pharms. Corp.*,
No. 04 Civ. 9414, 2010 WL 4877852 (S.D.N.Y. Nov. 30, 2010)............................ 14

*Wade v. Kroger Co.*,
 No. 3:01CV-699-R, 2008 WL 4999171 (W.D. Ky. Nov. 20, 2008)......................... 8

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011)................................................................................................ 10

*Williams v. Costco Wholesale Corp.*,
No. 02-cv-2003, 2010 WL 2721452 (S.D. Cal. July 7, 2010) ................................ 10

*Wright v. Stern*,
553 F. Supp. 2d 337, 347 (S.D.N.Y. 2008). ........................................................... 14

RULES

Fed. R. Civ. 23(e)(2) ............................................................................................. 6

# I. INTRODUCTION

On behalf of themselves and the conditionally certified Class of current and former Zillow employees, Plaintiffs Class Representatives John Balnicki and Nicole Correa moves for final certification of the Class and final approval of the Parties' class action Settlement (the "Settlement").

This $1.1 million, non-reversionary Settlement provides meaningful financial redress to each Class Member including payments that have already been issued for overtime wages. The Class has signaled unanimous support for the Settlement. Each of the 324 Class Members received a detailed, Court-approved notice apprising them of the terms of the Settlement and their options to participate, opt-out, or object. In response, none have requested exclusion and none has objected to date.[1] This signals that the Settlement is fair, reasonable, and adequate in the opinion of the Class. Each of the factors that courts consider in evaluating a Class settlement weighs in favor of approval. This Settlement is the product of well-informed, arm's length negotiations between experienced counsel and provides relief for the Class that is fair, reasonable, and adequate in light of the risk, burdens, and delays of litigation. In accordance with "the strong judicial policy" favoring class action settlements, *Linney v. Alaska Cellular P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998), the Court should approve the Settlement and dismiss the action.

# II. FACTUAL BACKGROUND

## A. Summary of Claims

Plaintiffs Correa and Balnicki prosecuted this lawsuit against Zillow over the last year to alleging violations of California wage and hour laws based on Zillow's compensation practices to its Sales Executives and Business Consultants. The main thrust of Plaintiffs' claims against Defendants are centered around Zillow's uniform practice of charging back a portion of customer cancellations/account terminations

---

[1] The Exclusion Deadline is two weeks away and the Parties will update the Court as to the final numbers of any objectors or opt-outs.

to its Business Consultants ("BCs") and Sales Executives ("SEs) commission payments. Plaintiffs alleged that Zillow illegally takes back a portion of BCs and SCs' commissions if a customer cancels their account, even if those cancellations have no relationship to anything the SEs or BCs have done.

Over several months, the parties engaged in intensive investigation regarding the claims at issue. Defendant produced, and Plaintiff analyzed and reviewed, voluminous data related to the potential exposure in this case including information included the total number of Class Members, their various positions throughout the liability period, the various incentive compensation plans applicable to Class Members, detailed payroll data for Class Members, information regarding which Class Members signed severance agreements and which signed arbitration agreements, and information related to prior litigation. After a full day of contested negotiations mediated by Hon. Edward Infante on December 16, 2019, the parties reached this settlement.

### B. Preliminary Approval

The Parties reached the Settlement after extensive informal discovery, detailed analysis of class-wide data, protracted negotiations, and a mediation session with renowned mediator Hon. Edward Infante, as fully described in Plaintiff's Memorandum ISO Preliminary Approval and a directed Supplemental Brief ISO Preliminary Approval requested by the Court. (Dkt. Nos. 33-1, 40.)

Through the rigorous preliminary approval process, the Court and the Parties thoroughly probed the Settlement and made improvements that will inure to the benefit of the Class. The Court accordingly issued an Order on January 12, 2021 preliminarily approving the settlement finding that the Parties had satisfied its conditions for preliminary approval and setting dates for dissemination of the Class Notice. In the Order, the Court conditionally certified the Class Action for settlement purposes, named Plaintiffs John Balnicki, and Nicole Correa as Class Representative, named Aashish Y. Desai as Class Counsel, and approved the

original Settlement and the Notice subject to certain revisions that were ultimately approved by the Court. (Dkt. No. 43).

### C. The Notice Process and the Class' Response

On February 24, 2021 the Class Administrator mailed Class Notices to 324 Class Members. (Decl. of Madely Nava ¶ 6.) The Notice advised Class Members of their anticipated portion of the common fund and informed them that they could submit a request for exclusion, objection, and/or dispute postmarked by April 10, 2021. (*Id.* Ex. A.) The Administrator performed address traces on Notices returned as undeliverable and promptly re-mailed the Notice to those Class Members for whom alternate addresses were identified. (*Id.* ¶ 8.) As of the date of this filing, the Administrator has received no objections and no requests for exclusion. (*Id.* ¶¶ 11-12.)

## III. THE SETTLEMENT BEFORE THE COURT

### A. Basic Terms of Settlement

The major terms of the Settlement are as follows:

(1)   The Settlement amount is $1,100,000 (the "Gross Settlement Amount");

(2)   The Settlement resolves claims of the following proposed Settlement Class: Individuals who worked for Zillow Inc. in California from March 18, 2015 to the date of the preliminary approval in the following positions: Inside Sales Consultant, Business Consultant I, Business Consultant II, Senior Business Consultant, Sr. Business Consultant, Senior Business Consultant I, Senior Business Consultant II, Account Sales Executive, Senior Sales Executive, Sr. Sales Executive, Special Project, Special Project Sales Executive, Senior Special Products Sales Executive, Sr. Special Products Sales Executive.

(3)     There is no reversion. Any uncashed checks shall be tendered, in the name of Settlement Class Member, to the California State Controller's Office (SCO), Unclaimed Property Division under the procedures set forth by C.C.P. section 1300, *et seq*.;

(4)     The Class Members *will not have to make a claim* to receive settlement payments. Distributions will be made *directly* to each Class Member who does not timely opt out;

(5)     As a result of the Settlement, the average payment to an individual Class Members who did not sign a severance is approximately $1,000;

(6)     Plaintiffs seek enhancement awards in the sum total of $17,500, which are allocated based on the scope of the individual release signed by each Plaintiff.

(7)     Plaintiffs will also move the Court for an award for attorneys' fees of 33% of the Gross Settlement Amount, approximately $366,630, which is *less* than counsel's *unadorned* lodestar of $444,958 plus up to $9,676.46 in costs, both of which are itemized and provided (at the preliminary approval stage) to the Court in support of the asserted lodestar and costs;

(8)     $40,000 of the Gross Settlement Amount is allocated as PAGA penalties.

//
//
///

IV.   **ARGUMENT**

A.   **Class Action Settlements Are Favored and Should Be Approved When Fundamentally Fair, Adequate, and Reasonable**

1. *There Is a Strong Policy in Favor of Settlements, Particularly in Employment Discrimination Class Actions*

It is well-established that there is a strong policy in favor of settlement; this policy is especially pronounced in complex class action litigation and even more so in the context of employment discrimination. *See, e.g., Officers for Justice v. Civil Serv. Comm'n of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982) ("[V]oluntary conciliation and settlement are the preferred means of dispute resolution. This is especially true in complex class action litigation, and even more so where the subject matter is employment discrimination."). As that Court has further emphasized, settlements provide class members with compensation "without the burdens, stress, and time of litigation"; some class members may even recover more than they could have at trial. Moreover, settlements serve the interests of the court and the public by "helping to lessen docket congestion." *Marek v. Chesny*, 473 U.S. 1, 10 (1985).

2. *The Court Need Only Determine Whether the Settlement Is "Fair as a Whole"*

"The very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes." *Officers for Justice*, 688 F.2d at 624 (citation omitted). Hence, the Court's role in evaluating and approving a class action settlement is limited in nature: "The proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators." *Id*. at 625. "Ultimately, the district court's determination is nothing more than an amalgam of delicate balancing, gross approximations and rough justice." *Id*. (citation omitted). A court should therefore approve a class settlement

if it is "fundamentally fair, adequate and reasonable." *Id.* at 625. The Court's "role...is limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or collusion between the negotiating parties, and that the settlement is fair as a whole." *Odrick v. UnionBanCal Corp.*, No. C 10– 5565, 2012 WL 6019495, at *3 (N.D. Cal. Dec. 3, 2012). It is not within the Court's purview "to reach any ultimate conclusions regarding the merits of the dispute, nor to second guess the settlement terms." *Id.* (citing *Officers for Justice*); *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) ("Neither the district court nor this court ha[s] the ability to delete, modify or substitute certain provisions.") (citation omitted).

To assess fairness, reasonableness, and adequacy, the Court examines: (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *Churchill Village, LLC v. General Electric*, 361 F.3d 566, 575 (9th Cir. 2004) (citation omitted); *see also* Fed. R. Civ. 23(e)(2).

### 3. The Settlement Should Be Afforded a Strong Presumption of Fairness

"Settlements are afforded a presumption of fairness if (1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." *Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 445 (E.D. Cal. 2013); *see also Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525–29 (C.D. Cal. 2004) (explaining final approval factors). That presumption of fairness is reinforced when the Court has already given preliminary approval to a settlement. *See In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078,

1079 (N.D. Cal. 2007) ("'[The] preliminary [approval] determination establishes an initial presumption of fairness.'") (quoting *In re Gen. Motors Corp.*, 55 F.3d 768, 784 (3d Cir. 1995)). This Settlement here fits the bill and should be presumed to be fair.

### 4. The Parties' Arm's Length Negotiations, Significant Pre-Settlement Discovery, and Absence of a Reversionary Clause Support Approval

"A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair," because these conditions "suggest . . . that the Parties arrived at a compromise based on a full understanding of the legal and factual issues surrounding the case." *National Rural Telecommunications v. DIRECTV*, 221 F.R.D. at 527-28 (C.D. Cal. 2004) (citations omitted). Here, there can be no question that the Settlement was the result of hard-fought, arm's-length negotiation. The Settlement was reached only after a thorough investigation and negotiation process that included extensive informal discovery and the analysis of data regarding the Classes and their potential damages. The Parties fully aired their respective positions in a lengthy mediation with an experienced and highly reputed third-party neutral. The assistance of an impartial mediator strongly suggests the absence of collusion. *See, e.g.*, *Morales v. Steveco, Inc.*, No. 1:09-cv-704, 2011 WL 5511767, at *11 (E.D. Cal. Nov. 10, 2011).

In addition, the Settlement contains no reversionary clause, meaning that all funds will be distributed. This further indicates a lack of collusion, supporting final approval. *Betancourt v. Advantage Hum. Resourcing, Inc.*, No. 14-cv-01788, 2015 WL 12661922, at *7 (N.D. Cal. Aug. 28, 2015). Simply put, "the risk of collusion among counsel is so small that it is effectively non-existent." *Wade v. Kroger Co.*, No. 3:01CV-699-R, 2008 WL 4999171, at *3 (W.D. Ky. Nov. 20, 2008).

### 5. Counsel Are Skilled and Seasoned Employment Lawyers

Class Counsel, Desai Law Firm, is well-recognized and respected law firm experienced in complex class action litigation, particularly in wage and hour cases.

### 6. No Employees Have Objected to the Settlement

"It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2007) (citation omitted); *see also Churchill Village*, 361 F.3d at 576-77. Here, 324 Settlement Class Members have received notice and an opportunity to opt-out or object to the Settlement. To date, just two weeks from the close of the dispute and exclusion period, there have been no opt-outs and no objections. This overwhelming response represents a resounding endorsement of the Settlement. *See, e.g., Chu v. Wells Fargo Invs. LLC*, No. C 05-4526, 2011 WL 672645, at *4 (N.D. Cal. Feb. 15, 2011) ("[I]t is strong testament to the fairness of the settlement that not a single objector has come forward and that only 16 out of 2,752 noticed class members opted out.").[2] In addition, several class members have expressed their support for the settlement to Counsel, with several submitting declarations on the record. (Desai Decl. ¶ 5.)

### B. The Settlement Is Fair, Reasonable, and Adequate

The history of this matter thus affords the Settlement a presumption of fairness. Moreover, the remaining factors enumerated in *Churchill Village* also demonstrate that the Settlement's terms are eminently fair and reasonable.

---

[2] *See also Franco v. Ruiz Food Prods., Inc.*, No. 1:10–cv–02354, 2012 WL 5941801, at *10 (E.D. Cal. Nov. 27, 2012) ("[t]he settlement is [] entitled to a presumption of fairness" where, *inter alia*, there were no objections filed); *Garcia v. Gordon Trucking, Inc.*, No. 1:10-CV-324, 2012 WL 5364575, at *5 (E.D. Cal. Oct. 31, 2012) (approving wage and hour settlement with average award of $1,626 where there were no objections, and less than 1% of the class elected to opt out).

### 1. The Strength of the Case, and the Risk, Complexity, and Duration of Further Litigation

Both the procedural and substantive issues of this case have been hotly contested. The Parties have engaged in extensive discovery, data analysis, and negotiations. Absent settlement, the costs of litigating would have increased significantly for both sides. Counsel would have had to litigate the propriety of both a Rule 23 class action and a PAGA representative action, dispositive motions, a trial, and potential appeals. This process would have necessitated continued and lengthy discovery including costly and time-intensive depositions of Class Members across the country. *See, e.g.*, *DIRECTV, Inc.*, 221 F.R.D. at 526 ("unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results").

Moreover, while Plaintiffs believe they have meritorious claims, Defendants deny liability and the propriety of any representative action, and it is entirely possible that the Court would find against Plaintiffs. The Settlement, which guarantees that Class Members receive substantial recoveries, provides significant advantages over rolling the dice and proceeding to final adjudication on the merits—after which the Class might achieve nothing. *See, e.g.*, *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*, No. 8:10ML 02151, 2013 WL 3224585, at \*14 (C.D. Cal. July 24, 2013) (approving class settlement over numerous objections because, "[s]imply put, Plaintiffs might eventually recover more with continued litigation, but they also might recover nothing").

In short, the Settlement provides a substantial and immediate benefit to the Classes, which is "preferable to lengthy and expensive litigation with uncertain results." *Knapp v. Art.com, Inc.*, 283 F. Supp. 3d 823, 832 (N.D. Cal. 2017).[3]

---

[3] *See also, e.g., Williams v. Costco Wholesale Corp.*, No. 02-cv-2003, 2010 WL 2721452, at \*3 (S.D. Cal. July 7, 2010) ("Given these risks, the Court agrees that

### 2. The Risks of Maintaining Class Status Through Trial

Zillow has agreed to a class action certification for settlement purposes, but has made clear that absent this Settlement, it would have contested the propriety of class treatment both in response to a motion for certification and through any trial. Substantial disputes remain as to both merits' issues and the certifiability of the Classes. Disputes pertaining to certification stem from the constant evolution of Rule 23 jurisprudence in light of the Supreme Court's ruling in *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011), as well as recent lower-court decisions interpreting it. While Plaintiffs believe this matter would have ultimately proceeded through trial as a class action, they recognize that this was a significant challenge and by no means guaranteed.

Thus, this factor clearly weighs in favor of settlement. *See, e.g.*, *Couser v. Comenity Bank*, 125 F. Supp. 3d 1034, 1042 (S.D. Cal. 2017) ("Where there is a risk of maintaining class action status throughout the trial, this factor favors approving the settlement."); *Chu*, 2011 WL 672645, at *4 (noting that "the outcome of plaintiffs' case was far from certain, particularly in light of several recent decertification orders and denials of certification in similar ... class actions").[4]

### 3. The Benefits Provided by the Settlement

When evaluating the sufficiency of a settlement, the Court must consider the settlement as a whole and not its individual components, such as the direct cash relief provided through the class monetary fund. As stated in *Officers for Justice*:

the actual recovery through settlement confers substantial benefits on the class that 26 outweigh the potential recovery through full adjudication."); *Bond v. Ferguson Enters.*, No. 1:09-cv-01662, 2011 WL 284962, at *7 (E.D. Cal. Jan. 25, 2011) ("Even if Plaintiffs were to prevail, they would be required to expend considerable additional time and resources, potentially outweighing any additional recovery obtained through successful litigation.").

[4] *See further Morales*, 2011 WL 5511767, at *10 ("Plaintiffs acknowledge that even if they demonstrate wage and hour violations ... there would be substantial risk the Class would not be certified by the Court.") (quotation omitted).

> It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair This is particularly true in cases, such as this, where monetary relief is but one form of the relief requested by the plaintiffs. It is the complete package taken as a whole, rather than the individual component parts, that must be examined for overall fairness. 688 2d at 628. [5]

Further, "the provisions of a class action settlement must be viewed in terms of a range of probabilities, not mere possibilities." *Id*. at 630. The Court's essential function is to assess "whether the settlement falls below the lowest point in the range of reasonableness." *Long v. HBSC USA, Inc.*, No. 14 Civ. 6233, 2015 WL 5444651, at *5 (S.D.N.Y. Sept 11, 2015) (citation omitted).

The Settlement will result in in direct, substantial cash payments to the Class Members. *See, e.g., Officers for Justice*, 688 F.2d at 624-30 (rejecting objector's contentions that back pay portion of settlement, a $400,000 fund providing for maximum award of up to $3,720, was "grossly inadequate" and that there was no provision for damages for emotional distress); *Block*, 1985 WL 56614 (approving employment discrimination settlement providing for injunctive relief and cash fund of $300,000, with awards ranging from $500 to $3,500).

Here, the cash fund will be allocated to Class Members based on a point system that accounts for whether the employment periods of Class Members, whether they signed severance agreements with a general release, and whether they were paid certain commissions within the Class Period. It is estimated that

---

[5] *See also, e.g., Martens v. Smith Barney*, 181 F.R.D. 243, 265 (S.D.N.Y. 1998) (noting that "[c]ourts approve even settlements that fully waive damages claims where, as here, the settlements implement structural reforms to remedy the widespread civil rights violations plaintiffs allege," and that settlements are even more favorable and suitable for approval when they allow or provide for monetary relief in addition to injunctive measures).

individuals who have not previously released their claims via a severance agreement will receive an average recovery of $ 1,106.  Nava Decl. ¶ 14.

Based on their analysis, Class Counsel estimates that the $1.1 million represents more than 13.75% of Plaintiffs' maximum exposure calculation using aggressive but defensible assumptions.  Such a result constitutes a reasonable and adequate recovery, especially in the employment discrimination context. *See*, *e.g.*, *K.H. v. Sec'y of Dep't of Homeland Sec.*, No. 15-cv-02740, 2018 WL 6606248, at *4 (N.D. Cal. Dec. 17, 2018) (in light of "significant issues in proving liability," approving ADEA settlement providing $1,500 to each class member who separated from defendant-employer, while acknowledging that four plaintiffs could have potentially recovered up to $80-100,000 each; thus, the settlement represented about 1.5-2% of the potential recovery for those plaintiffs); *Boyd v. Bechtel, Corp.*, 485 F. Supp. 610 (N.D. Cal. 1979) (approving settlement of $120,000 out of $750,000 maximum liability (or 16%) in Title VII and Section 1981 race discrimination case, without any non- monetary relief component, where plaintiffs estimated that no more 18% of class members would likely succeed in the damages phase of a trial).

### 4. Settlements in other types of employment actions also provide ample support.

This settlement amount is in line with other settlements in wage and hour cases.  *See, e.g.*, *Roe v. Jose Torres L.D. Latin Club Bar, Inc.*, No. 19-cv-06088, 2020 WL 5074392, at *6 (N.D. Cal. Aug. 27, 2020) (approving gross wage-and-hour settlement representing approximately 7.07% of the maximum potential recovery" as providing "good value"); *Stovall-Gusman v. W.W. Granger, Inc.*, at *4 (N.D. Cal. June 17, 2015) (approving net wage-and-hour settlement representing "about 7.3% of Plaintiff's estimated trial award": "[T]he Court finds that [these] figures are 'within the range of reasonableness' in light of the risks and costs of

litigation."); *Van Ba Ma v. Covidien Holding, Inc.*, 2014 WL 2472316, at *3 (C.D. Cal. May 30, 2014) (wage-and-hour case: "[T]he settlement constitutes 9.1% of the total potential value of the action, if the class attained a full, favorable trial verdict on all causes of action; and 18.5% of the likely potential value of the action, if the class attained a favorable trial verdict on its strong causes of action. The average payment per claimant is $2,528.44. . . .[I]t is not uncommon for a class action settlement to amount to approximately 10% of the total potential value.") (citations omitted) *In re Hightech Employees Antitrust Litig..,* No. 11-CV-02509, 2015 5159441, at *4 (N.D. Cal. Sept. 2, 2015) (in employment case involving alleged wage suppression, approving total settlements that "exceed[ed] 14 percent of Plaintiffs' proposed single damages estimate. . . .District courts in the Ninth Circuit routinely approve settlements with much larger differences between the settlement amount and estimated damages.") (collecting cases).

Wage and hour actions like these are especially useful reference points because they include similar measures of damages, including liquidated damages in many cases (which inflate maximum exposure estimates). Importantly, Defendants here not only vigorously contest liability and the propriety of any type of representative action. Given the high degree of risk and uncertainty in further litigation, the recovery provided by the Settlement is significant. Class Members are guaranteed a recovery without taking any further action, unlike in a litigated case under the *Teamsters* model. *Cf. Booth v. Strategic Realty Tr. Inc.*, No. 13-cv-04921, 2015 WL 3957746, at *10 (N.D. Cal. June 28, 2015) (preliminarily approving class settlement and emphasizing that "[t]his is not a claims-made settlement and class members are not required to take any action to share in class funds"). Unless the Settlement is approved, it is likely that the ensuing litigation would carry on for years. *See, e.g., Officers for Justice*, 688 F.2d at 629 ("The track record for large class action employment discrimination cases demonstrates that

many years may be consumed by trial(s) and appeal(s) before the dust finally settles."). In the meantime, "many of the immediate and tangible benefits accruing from the settlement would be lost." *Id*.

In light of the extensive discovery and protracted negotiation process leading to the Settlement, there is little reason to believe that further settlement negotiations would result in any additional settlement funds and may actual diminish with additional litigation. *Wright v. Stern*, 553 F. Supp. 2d 337, 347 (S.D.N.Y. 2008). Moreover, "[t]here is simply no assurance that more years of litigation would result in any greater recovery." *Velez v. Novartis Pharms. Corp.*, No. 04 Civ. 9414, 2010 WL 4877852, at *15 (S.D.N.Y. Nov. 30, 2010) (quotation omitted); *see also Officers for Justice*, 688 F.2d at 629 ("There is simply no indication . . . that any judgement reached after a full trial would be sufficiently large, when discounted, to reward the class members for their patience."); *Chu*, 2011 WL 672645, at *4 (granting final approval where awards would be substantial and litigation risk was significant); *Columbus Drywall & Insulation, Inc. v. Masco Corp.*, 258 F.R.D. 545, 559-60 (N.D. Ga. 2007) (although a small fraction of the potential recovery at trial, "the settlement offers plaintiffs the opportunity to obtain an immediate, certain recovery . . . .Plaintiffs do not have any guarantee that they will receive a larger recovery from the Settling Defendants were they to forgo the settlement offer.").

The settlement provides substantial monetary relief to the classes which justify the settlement in view of the substantial risks that the classes would not have prevailed at the class liability trial, would not have been further certified for purposes of monetary relief, or the damages recovered would have been substantially less than those sought. Even if the classes prevailed at the class liability trial, class members likely would not obtain any individual monetary relief without several more years of litigation, including a likely appeal involving novel issues of law to increase as a result of continued litigation.

Accordingly: "it is prudent to accept a settlement that provides [claimants] both a substantial monetary recovery and significant employment benefits now." *Wilkerson*, 171 F.R.D. at 290.

### 5. The Extent of Discovery and Stage of the Proceedings

This factor considers whether the Parties have "sufficient information to make an informed decision about the [s]ettlement." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000). Here, there can be no question that this factor weighs strongly in favor of approval. As discussed above, the Parties were only able to reach this agreement after highly experienced counsel conducted extensive informal discovery and sharing of information, including the exchange of documents and analysis of voluminous data. Desai Decl. ISO Prelim. Approval, ¶¶ 5-7. The degree to which the Parties understood their positions is further emphasized by the fact that they engaged in numerous rounds of negotiation, including a mediation, overseen by an experienced mediator, that extended all day. (*Id.* ¶ 7). *See, e.g.*, *Chu v. Wells Fargo,* 2011 WL 672645, at *4 (N.D. Cal. Feb. 6, 2011) (noting that "the respective factual and legal strengths of the Parties' arguments are likely to have been sufficiently fleshed out" in the settlement process). There is thus no reason to believe that this Settlement is premature or that further information would help the Parties reach a fairer or more favorable result.

### 6. The Experience and Views of Counsel

As discussed above, counsel for both sides are experienced in employment class actions. They endorse the Settlement as fair, reasonable, and adequate.

### 7. The Reaction of the Class Members to the Proposed Settlement

As detailed above, Class Members have had an extremely positive reaction to the Settlement with zero opt-outs and zero objections as of March 26. These numbers indicate resounding approval and preference to avoid further litigation. The law is clear that the "absence of a large number of objections to a proposed

class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Giroux v. Essex Property Tr., Inc.*, No. 16-cv-01722, 2019 WL 2106587, at *4 (N.D. Cal. May 14, 2019) (citation omitted); *see also DIRECTV*, 221 F.R.D. at 528-29 ("The complete absence of Class Member objections to the Proposed Settlement speaks volumes with respect to the overwhelming degree of support for the Proposed Settlement among the Class Members. That unanimous, positive reaction . . . is compelling evidence that the Proposed Settlement is fair, just, reasonable, and adequate.")

This Court has followed suit, even where parties have been unable to present it with class member declarations in support of a settlement. *See Rodriguez v. El Toro Limited P'ship*, No. 8:16-cv-59-JLS-KES, Dkt. 98, at *7-8 (C.D. Cal. June 26, 2018) (Staton, J.) (collecting cases and finding that the lack of objections and relatively small number of opt-outs supported approval). Here, Plaintiffs have in fact submitted Class Member declarations in favor of the Settlement. (Desai Decl. ¶ 5.)

In sum, there can be no question that this hard-won settlement is "fundamentally fair, adequate, and reasonable." *Hanlon v. Chrysler Corp.*, 150 F.3d at 1026 (9th Cir. 1998). The Settlement not only protects all Class Members, including absent parties, but affords them a significant recovery on the risky, complex claims pled in this case. The Court should approve the Settlement.

## V.    **CONCLUSION**

The Court has thoroughly examined and combed over the Parties' Settlement. After undergoing this extensive process, the Court preliminarily approved the Settlement as fair, reasonable, and adequate and coming within the range of possible final approval. The Class Members have joined with the Court in speaking in a unified voice in favor of the Settlement. The Class's lack of any objection or dispute whatsoever, and any opt-outs are potent evidence that the

Settlement is fair, reasonable, and adequate in all respects. It would serve the interest of the Class, the judicial system, and the public to proceed with implementation of the Settlement rather than foment years of contested, burdensome, expensive, and risky litigation.

Accordingly, the Court should grant final approval of the Parties' Settlement.


Respectfully submitted,


Dated:   March 26, 2021                    DESAI LAW FIRM, P.C.


By:_____/s/ Aashish Y. Desai_____
                Aashish Y. Desai
                Adrianne De Castro
                Attorneys for Plaintiffs