JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICOLE CORREA, JOHN BALNICKI, on behalf of themselves and all others similarly situated,<br><br>PLAINTIFFS,<br><br>v.<br><br>ZILLOW, INC., et al.<br><br>DEFENDANTS. | Case No.: 8:19-cv-00921-JLS-DFM<br><br>**ORDER (1) GRANTING PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT (DOC. 47) AND (2) GRANTING IN PART PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES AND SERVICE AWARDS (DOC. 48)** |

Before the Court are two unopposed Motions filed by Plaintiffs Nicole Correa and John Balnicki: one seeking final approval of the class action settlement and one seeking an award of attorneys' fees, reimbursement of expenses, and service awards. (Final Approval Mot., Doc. 47; Fees Mot., Doc. 48.)[1]  Having reviewed the papers, held a fairness hearing, and taken the matter under submission, the Court GRANTS the Motion for Final Approval of Class Action Settlement and GRANTS IN PART the Motion for Award of Attorneys' Fees, Reimbursement of Expenses, and Service Awards.

I. **BACKGROUND**

The Court detailed the background facts of this action in its order granting preliminary approval of the class action settlement ("Preliminary Approval Order") and need not repeat them here. (*See* Preliminary Approval Order, Doc. 42.)  In brief, Plaintiffs Nicole Correa and John Balnicki ("Plaintiffs") bring this class action on behalf of similarly situated current or former Zillow, Inc. ("Zillow") employees, asserting various California wage and hour law violations. (Second Amended Complaint ("SAC"), Doc. 30.)  The gravamen of Plaintiffs' complaint is that Zillow uniformly charged back a portion of customer cancellations/account terminations to its employees' commission payments.

Correa originally filed this suit in state court in March 2019. (Compl., Exhibit 1 to Notice of Removal ("NOR"), Doc. 1-1.)  Zillow removed the action to this Court on May 15, 2019. (NOR, Doc. 1.)  The parties then engaged in extensive informal discovery, attended a formal mediation session, and ultimately executed a Settlement Agreement on May 26, 2020. (Preliminary Approval Order at 2; "Settlement Agreement," Doc. 47-3.)  The Settlement Agreement provides for a payment of $1,100,000, inclusive of attorneys' fees and costs, the cost of administration, service awards to the Class Representatives, taxes attendant to distributions, and a payment of $40,000 for Private Attorney General Act ("PAGA") penalties. (Settlement Agreement ¶ 46.)  The Settlement Fund is non-

---

[1] At oral argument, the Court ordered Class Counsel to file supplemental in support of the argument that California law changes the outcome of the attorneys' fees analysis, which Class Counsel timely provided. (Supp. Fees Brief, Doc. 51.)

2

reversionary; therefore, no amount of the Settlement Fund will revert back to Zillow after distribution. Furthermore, distributions will be made directly to each Class Member who does not opt out of the class. In exchange for the foregoing relief, Plaintiffs and all Class Members will release Zillow (and other released parties) from those claims that were asserted, or that related to those asserted in the SAC, arising in the period from March 18, 2015 through the date of preliminary approval. (Settlement Agreement ¶ 30.) The Plaintiffs and PAGA Members also release Zillow from any PAGA claims premised on the Labor Code violations asserted in the SAC. (*Id.*)

After the Settlement Agreement was finalized, Plaintiffs filed a motion for preliminary approval, which the Court granted on January 11, 2021. There, the Court conditionally certified the following Rule 23(b)(3) class for settlement purposes:

> All persons who are employed or have been employed by Defendant in the State of California at any time during the Class Period [March 18, 2015 to the date of this preliminary approval] as a Sales Executive or Business Consultant, or the following related job positions: Inside Sales Consultant, Business Consultant I, Business Consultant II, Senior Business Consultant, Sr. Business Consultant, Senior Business Consultant I, Senior Business Consultant II, Account Sales Executive, Senior Sales Executive, Sr. Sales Executive, Special Project, Special Project Sales Executive, Senior Special Products Sales Executive, Sr. Special Products Sales Executive.

(Preliminary Approval Order at 5–12.)

The Court's Preliminary Approval Order also approved ILYM Group Inc. ("ILYM") as Class Administrator, found Plaintiffs to be adequate Class Representatives, and appointed Aashish Y. Desai of Desai Law Firm, P.C. as Class Counsel. Moreover, the Court ordered certain changes to the proposed Class Notice, set the final fairness hearing for May 28, 2021, and set forth certain deadlines for filings related to the final fairness hearing. Class Counsel timely filed a revised Class Notice (Doc. 44-2), incorporating the changes ordered by the Court. On February 5, 2021, the Court approved Plaintiffs' revised Class Notice for dissemination. (Doc. 45.)

On February 24, 2021 the Class Administrator mailed Class Notices to 324 Class Members. (Nava Decl., Doc. 47-5 ¶ 6.) The Notice advised Class Members of their anticipated portion of the common fund and informed them that they could submit a request for exclusion, objection, and/or dispute postmarked by April 10, 2021. (*Id.* Ex. A.) The Administrator performed address traces on Notices returned as undeliverable and re-mailed the Notice to those Class Members for whom alternate addresses were identified. (*Id.* ¶ 8.) Ultimately, a total of 8 Notice Packets were deemed undeliverable because no updated address was found notwithstanding the skip tracing. (Supplemental Nava Decl., Doc. 49, ¶ 6.) The Class Administrator received no objections and no requests for exclusion. (*Id.* ¶¶ 7–8.)

## II.   CONDITIONAL CERTIFICATION

In its Preliminary Approval Order, the Court conditionally certified the Class under Rule 23(b)(3) for settlement purposes. (*See* Preliminary Approval Order, Doc. 42, at 5–12.)

Nothing since the Preliminary Approval Order counsels the Court to depart from its previous conclusions on the existence of a proper Settlement Class. The Court therefore incorporates its class certification analysis from the Preliminary Approval Order into the current Order. (Preliminary Approval Order at 5–12.)

## III.   FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT

### A. Legal Standard

Before approving a class-action settlement, Rule 23 of the Federal Rules of Civil Procedure requires the Court to determine whether the proposed settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(2). "To determine whether a settlement agreement meets these standards, a district court must consider a number of factors, including: (1) the strength of plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a

governmental participant ; and (8) the reaction of the class members to the proposed settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003) (numbering added) (citations and internal quotation marks omitted). "The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Officers for Justice v. Civil Servs. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). "It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness, and the settlement must stand or fall in its entirety." *Staton*, 327 F.3d at 960 (citations and internal quotation marks omitted).

In addition to these factors, where, as here, "a settlement agreement is negotiated *prior* to formal class certification," the Court must also satisfy itself that the settlement is not "the product of collusion among the negotiating parties." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946–47 (9th Cir. 2011) (emphasis in original) (citation omitted). Accordingly, the Court must look for explicit collusion and "more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *Id.* at 947 (citation omitted). Such signs include (1) "when counsel receive a disproportionate distribution of the settlement," (2) "when the parties negotiate a 'clear sailing' arrangement providing for the payment of attorneys' fees separate and apart from class funds," and (3) "when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund[.]" *Id.* (internal citations and quotation marks omitted).

### B. Discussion

In the Preliminary Approval Order, the Court evaluated each of the *Staton* factors identified above to determine whether the Settlement Agreement is fair, reasonable, and adequate under Rule 23. (*See* Preliminary Approval Order, Doc. 42, at 13–19.) The Court determined that the following factors weighed in favor of approval: (1) the strength

of Plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; and (6) the experience and views of counsel. (*Id.*) The Court was also satisfied that there were no signs of collusion between the parties. (*Id.* at 18–19.) The Court sees no reason to depart from its previous conclusion as to these factors. The Court therefore incorporates its analysis from the Preliminary Approval Order into the instant Order. (*Id*. at 13–19.)

However, at the time of preliminary approval, the Court noted that the Motion for Preliminary Approval did not provide evidence of Class Members' reactions to the proposed Settlement Agreement, which the Court therefore directed Plaintiffs to submit ahead of the final fairness hearing. (Preliminary Approval Order at 18.) In support of final approval, Plaintiffs submitted the declarations of three Class Members, expressing their support for the settlement results Plaintiffs achieved. (Ex. C to Desai Decl., Doc. 47-4.)

Moreover, the notice process has now concluded with no objections to the Settlement and no requests for exclusion. "It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) (citations omitted). Given the lack of objections and requests for exclusion, this factor too weighs in favor of approval. *See Rodriguez v. El Toro Limited P'ship*, No. 8:16-cv-59-JLS-KES, Doc. 98, at *7–8 (C.D. Cal. June 26, 2018) (Staton, J.)

The Preliminary Approval Order also noted that, at the final approval stage, the Court would look to whether Class Members raise any objections to the point system the parties devised to allocate the net settlement among Class Members. (Preliminary Approval Order at 16–17.) As noted, no Class Members have raised objections to the Settlement, including the point system, which was explained in sufficient detail in the

Class Notice, and the Court is therefore satisfied that the proposed plan of allocation is reasonable.

In sum, having weighed the *Staton* factors and considered the Settlement as a whole, the Court finds the proposed settlement is fair, reasonable, and adequate. Accordingly, Plaintiffs' Motion for Final Approval is GRANTED. The Court now turns to Plaintiffs' Motion for attorneys' fees, expenses, and service awards.

## IV. <u>LITIGATION AND ADMINISTRATION COSTS</u>

Plaintiffs request (1) reimbursement of $ 9,676.46 in litigation expenses and (2) an award of $7,500 to the Class Administrator, ILYM Group, Inc., for administering the Settlement. The Court finds both requests reasonable.

Class Counsel in common fund cases are entitled to "reasonable out-of-pocket litigation expenses that would normally be charged to a fee-paying client." *Trustees of Const. Industry and Laborers Health and Welfare Trust v. Redland Ins. Co.*, 460 F.3d 1253, 1257 (9th Cir. 2006) (citations omitted); *see also* 42 U.S.C. § 2000e-5(k); Fed. R. Civ. P. 23(h) ("In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement.").

Here, Plaintiffs request reimbursement of a total of $ 9,676.46 in litigation expenses that Class Counsel incurred in litigating this action, which includes filing and mailing fees as well as mediation costs. Class Counsel have proffered sufficiently detailed evidence of the litigation expenses incurred in prosecuting this matter and obtaining the settlement. (Desai Fees Decl., Doc. 48-1, ¶ 3; "Itemized Costs," Ex. B to Desai Fees Decl., Doc. 48-3 (recording $ 9,676.46 in out-of-pocket costs).) And the amount Plaintiffs request here is below the $20,000 maximum set out in the Settlement Agreement and the Class Notice. (Settlement Agreement ¶ 46 (b).) The Court finds the expenses incurred by Class Counsel were reasonable out-of-pocket litigation expenses that would usually be charged to a fee-paying client, and therefore GRANTS the request for costs in the amount of $ 9,676.46.

Plaintiffs also request that the Court award $7,500 to the Class Administrator, ILYM Group, Inc., for its fees and costs in administering the Settlement. As noted, the Court's Preliminary Approval Order appointed ILYM as Class Administrator. The administration costs are below the $10,000 maximum set out by the Settlement Agreement. (Settlement Agreement ¶ 46 (c).) Having reviewed the work undertaken by the Settlement Administrator (*see* Nava Decl.), the Court finds the cost of administration was reasonable; therefore, it GRANTS the request and awards the Class Administrator fees in the amount of $7,500.

## V. ATTORNEYS' FEES

Rule 23 permits a court to award "reasonable attorneys' fees . . . that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). "[C]ourts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth Headset Prods.*, 654 F.3d at 941. In the Ninth Circuit, the benchmark for a fee award in common fund cases is 25% of the recovery obtained. *See id.* at 942 ("Where a settlement produces a common fund for the benefit of the entire class, . . . courts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record for any 'special circumstances' justifying a departure.").

Here, Plaintiffs request $366,630.00, in attorneys' fees, which represents 1/3 of the Settlement Fund—the maximum amount in attorneys' fees recoverable under the Settlement Agreement. (Fees Mot. at 2; Settlement Agreement ¶ 46 (a).) The Motion cites to federal court decisions approving fee awards in the 30% range and asserts that, in California, "fee awards for employment settlements that do not result in 'mega-funds' generally range between 30-33% of the common fund, with frequent upward departures." (Fees Mot. at 4.) However, the Court's own review of the case law confirms that "departing from the 25% benchmark is not standard." *Taylor v. TIC - The Indus. Co.*, 2018 WL 6131198, at *9 (C.D. Cal. Aug. 1, 2018)(collecting cases); *Hillman v. Lexicon*

*Consulting, Inc.*, 2017 WL 10434013, at *7 (C.D. Cal. Oct. 12, 2017)(same); *see also Brooks v. Life Care Centers of America, Inc.,* No. SACV 12-00659-CJC (RNBx), 2015 WL 13298569, at *4 (C.D. Cal. 2015) ("Awarding the benchmark in the mine run of wage and hour cases appears to be standard in this District."). Courts routinely decline to depart from the benchmark unless the plaintiff establishes that the particular facts of the case merit it. *See id.*

At the hearing on this matter, and in the supplemental brief submitted thereafter, Class Counsel also noted the Ninth Circuit's direction to apply state law regarding the method for calculating attorneys' fees in diversity actions, *Mangold v. California Public Utilities Commission*, 67 F.3d 1470, 1478-79 (9th Cir. 1995), and argued that because, unlike Ninth Circuit law, California law does not apply a 25% benchmark, awarding a 33 1/3% award is reasonable here. In support, the supplemental brief cites to the California Supreme Court's decision in *Laffitte v. Robert Half International Inc.*, 1 Cal. 5th 480 (2016). (Supp. Brief at 1-2.) As this Court has previously observed, however, *Laffite* merely confirmed that percentage-based fee awards are allowable under state law; it did not set a 33 1/3% benchmark or otherwise dispute the Ninth Circuit's 25% benchmark standard. *Hernandez v. Pei Wei Asian Diner LLC*, No. 8:17-CV-00679 JLS-JCG, 2017 WL 6888260, at *3 (C.D. Cal. Oct. 2, 2017) (citing *Laffitte*, 1 Cal. 5th at 494-96, 503). Indeed, although "California courts do not prescribe a benchmark starting point to evaluate fee requests, the Ninth Circuit's 25% benchmark can be 'a helpful assessment tool in evaluating the requested fee award.'" *Carlin v. DairyAmerica, Inc.*, 380 F. Supp. 3d 998, 1019 (E.D. Cal. 2019) (citing *Richardson v. THD At-Home Servs., Inc.*, 2016 WL 1366952, at *7 (E.D. Cal. Apr. 6, 2016)).

The Ninth Circuit has identified a number of factors the Court may consider in assessing whether to depart from the 25% benchmark, including: (1) the results achieved, (2) the risk of litigation, (3) the skill required and quality of work, and (4) the contingent nature of the fee and the financial burden carried by the plaintiffs. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048–50 (9th Cir. 2002). Counsel's lodestar may also "provide a

useful perspective on the reasonableness of a given percentage award." *Id.* at 1050.

For the reasons below, the Court finds that the *Vizcaino* factors do not justify the 33 1/3% Class Counsel has requested. Accordingly, the Court awards Class Counsel 25% of the Settlement Fund, which amounts to $275,000 of the Settlement Fund.

### A. Results Achieved

Class Counsel achieved a settlement that represents approximately 13.75% of Zillow's total exposure. (*See* Preliminary Approval Order, Doc. 42, at 16.) As discussed in the Preliminary Approval Order, this percentage of recovery is on the lower end of the recovery achieved in other wage and hour class action settlements. S*ee Freeman v. Zillow, Inc.,* 8:14-cv-01843-JLS-DFM, at Doc. 139 (C.D. Cal. May 10, 2017) (Staton, J.) (finding a settlement that represented 43% of defendant's maximum exposure to be comparable to, if not somewhat greater than, the recovery in other wage-and-hour actions)*; see also Bellinghausen v. Tractor Supply Co.*, 303 F.R.D. 611, 623–24 (N.D. Cal. 2014) (finding a settlement amount equaling between 9% and 27% of the total potential liability to be fair, adequate and reasonable given the uncertainty of continued litigation); *Greko v. Diesel U.S.A., Inc.,* No. 10-CV-02576 NC, 2013 WL 1789602, at *5 (N.D. Cal. Apr. 26, 2013) (finding settlement amount that constituted 24% of estimated damages to be reasonable and beneficial to the class). As the Court further noted at the preliminary approval stage, the results obtained here are reasonable given the broad class definition and the overlap of the claims asserted here with a previously settled class action against Zillow (Preliminary Approval Order at 16); however, these results do not warrant a departure from the 25% benchmark.

### B. Risk of Litigation

Class Counsel argues that the risk undertaken in prosecuting this action counsels in favor of an upward departure from the benchmark award. But most of the risks Class Counsel points to are common to class actions more generally and say nothing about whether this case presented unique hurdles. For example, Class Counsel argues that

"[l]arge-scale employment cases of this type are complicated and time-consuming," and that "Zillow has strongly disputed the merits of the Class's claims as well as the Class's ability to obtain and maintain certification." (Fees Mot. at 7.) However, as class actions go, this is not larger than most, nor is it unusual for the defendant to dispute the merits of the claims or the viability of a class. Class Counsel also points to some case-specific risks, namely, that certain aggrieved employees signed severance agreements that included a release of claims; that the value of certain claims could be significantly diminished in light of a previous settlement; and that Zillow had various commission plans throughout the liability period, thus potentially making any representative action unmanageable. (Desai Fees Decl. ¶ 17.) However, those are merely case-specific examples of a variety of class certification challenges that exist in wage and hour class actions. In sum, this action posed risks similar to those in most wage and hour class actions. Accordingly, this factor does not weigh in favor of a departure from the 25% benchmark.

### C. Skill Required and Quality of Work

Class Counsel provided skillful, quality work, including conducting extensive informal discovery, participating in mediation, and negotiating settlement terms. As noted in the Preliminary Approval Order, Class Counsel has significant experience with complex wage and hour class actions. (Preliminary Approval Order at 10.) Moreover, Class Counsel represents that his office spent time reviewing data produced by Zillow during informal discovery. (Desai Fees Decl. ¶ 6.) In sum, the Court concludes that the quality of the work was commensurate with what is typically required in successfully litigating a wage and hour class action. Accordingly, this factor does not weigh in favor of a departure from the benchmark.

### D. Contingent Nature of the Fee

Class Counsel invested approximately 539 hours in this case. (Fees Mot. at 9; "Billing Statement," Ex. A to Desai Decl., Doc. 48-2.) During the past two years,

Counsel have received no compensation for their efforts on behalf of Class Members. (Fees Mot. at 7.) "Courts have long recognized that the attorneys' contingent risk is an important factor in determining the fee award and may justify awarding a premium over an attorney's normal hourly rates." *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994). However, standing alone this factor does not justify an upward departure of the benchmark. *See, e.g., Clayton v. Knight Transp.*, 1:11-cv-00735-SAB, 2013 WL 5877213, at *8 (E.D. Cal. Oct. 30, 2013) (acknowledging that the contingent nature of the fee "is an important factor," but declining to grant an upward departure where "the risks associated with this case are no greater than that [sic] associated with any other [similar action]."). Here, the Settlement was reached after only a year of litigation. Put differently, this is not a case where Class Counsel invested years in the case without assurance of compensation. Accordingly, this factor does not weigh in favor of an upward departure from the benchmark.

### E. Lodestar Cross-Check

"Courts commonly—even after having decided to utilize the percentage-of-recovery method—perform a 'lodestar cross-check' by comparing the percentage-of-recovery figure with a rough calculation of the lodestar to assess the reasonableness of the percentage award." *Brooks v. Life Care Centers of Am., Inc.*, 2015 WL 13298569, at *5 (C.D. Cal. Oct. 19, 2015) (internal citations and quotation marks omitted); *see also Vizcaino*, 290 F.3d at 1050 ("Calculation of the lodestar, which measures the lawyers' investment of time in the litigation, provides a check on the reasonableness of the percentage award.").

To calculate the lodestar, the Court first determines whether the hourly rates sought by counsel are reasonable and then multiplies the rates by the reasonable number of attorney and staff hours billed on the case. "[T]he district court must determine a reasonable hourly rate considering the experience, skill, and reputation of the attorney requesting fees." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986). In determining reasonable hourly rates, courts may also "rely on [their] own familiarity

with the legal market." *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011). As for the number of reasonable hours, the Court generally "begin[s] with the billing records the prevailing party has submitted," and excludes entries for hours that are "excessive, redundant, or otherwise unnecessary." *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013).

Here, the Billing Sheets reflect that attorneys and staff billed 539 hours on this matter at a rate of $950 an hour for partner-level work performed by attorney Desai; $650 an hour for work performed by a senior associate (Desai Fees Decl. ¶ 15); and $250 an hour for paralegal work. (*See generally* Billing Statement.)

As an initial matter, Class Counsel have not provided the Court with enough evidence to support the attorney rates here. Desai's declaration makes clear that in 2019 and 2020—the years in which almost all of the work in this case was performed—his rate and his associate's rate were $100 per hour less than reflected in the Billing Sheets. Desai does not address the paralegal rate at all in his declaration. (Desai Fees Decl. ¶ 15.) Class Counsel cite decisions from other courts in this district approving attorney Desai's hourly rate of $750 in 2014. *See, e.g., Aguirre v. Genesis Logistics*, SACV 12-00687 (C.D. Cal. April 7, 2014) (affirming Desai's $750/hr rate as reasonable for the southern California market); *Mutch v. AYCO Company,* Case No. 30-2012-00587900 (Orange County Superior Court May 12, 2014) (approving Desai's $750/hr rate at final approval). But Class Counsel offer no evidence that the prevalent rate in this market for an attorney of Desai's skill and experience has increased to $950 an hour. Accordingly, in performing the lodestar cross-check, the Court finds the hourly rate of $850 for attorney Desai and $550 for the senior associate to be reasonable.

As for the reasonable number of hours, the Court has reviewed the Billing Sheets and is not generally troubled by the 539 hours billed.[2] While some of the work may not have been performed at the most efficient level (which is supported by the fact that

---

[2] Attorney Desai billed 381.9 hours, the senior associate on the case billed 107 hours, and a paralegal billed 50 hours. (*See* Billing Sheets.)

13

attorney Desai's hours dwarf those of the senior associate on the case), and some of the entries describe work that does not necessarily justify the hours billed (such as billing a full hour of partner time for "conference with paralegal re service of complaint" or for reading an "article in newspaper re lawsuit."), for the most part, the hours are not unreasonable. If the Court were calculating the lodestar as more than simply a cross-check, it would likely discount the number of hours by approximately ten percent.

The Court recognizes that even if the rates and hours were adjusted as noted above, a 25% benchmark award—$275,000—results in approximately a 0.77 lodestar multiplier.[3] Nonetheless, the fact that awarding Class Counsel the benchmark percentage-of-fund results in a negative multiplier when the lodestar cross-check is applied is not, without more, a reason to depart from the 25% benchmark. *Accord Brooks v. Life Care Centers of Am., Inc.*, 2015 WL 13298569, at *5 (C.D. Cal. Oct. 19, 2015) ("The fact that the lodestar significantly outpaces an award based on the 25% benchmark . . . is not a compelling reason to depart from the Ninth Circuit's benchmark, particularly absent evidence of exceptional risk or difficulty."); *Hillman v. Lexicon Consulting, Inc.*, 2017 WL 10434013, at *9 (C.D. Cal. Oct. 12, 2017) (same). As discussed above, the Court has considered the *Vizcaino* factors and finds this to be a typical wage and hour class action.

In sum, no exceptional circumstances are present to warrant a departure from the 25% benchmark and the lodestar cross-check does not counsel a different result in this case. Accordingly, the Court awards Class Counsel 25% of the Settlement Fund, which amounts to $275,000.

## VI. CLASS REPRESENTATIVE SERVICE AWARD

The two named Plaintiffs seek a total of $17,500 in Service Awards. Specifically, the Motion seeks $15,000 for John Balnicki and $2,500 for Nicole Correa. (Fees Mot. at

---

[3] ($850 (Desai's adjusted hourly billing rate) x 343.71 (hours reasonably billed)) + ($550 (senior associate hourly billing rate) x 96.39 (hours reasonably billed)) + ($250 (paralegal billing rate) x 45 (hours reasonably billed))=$356,409

13-18.)

Service awards are "discretionary . . . and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009) (citing *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000)).

Here, Class Counsel represents that Correa and Balnicki assisted with the initial investigation; prepared and reviewed the complaint; reviewed and gathered documents about their claims; discussed the strategy in the case; participated in regular conversations about the case; and participated in a full-day mediation for the case. (Fees Mot. at 13-14.) Moreover, Plaintiffs have proffered declarations in support of the work they performed. (Correa Decl., Doc. 33-8; Balnicki Decl., Doc. 33-9.) Correa estimates that she spent 250–300 hours working on the case. (Correa Decl. ¶ 9.) Balnicki estimates that he spent 100–150 hours on the case. (Balnicki Decl. ¶ 8.) And both Plaintiffs remained Zillow employees throughout the suit (Fees Mot. at 15); therefore, they assumed the additional risk that Zillow might retaliate against them and also experienced the stress of suing their employer. (Correa Decl. ¶ 7; Balnicki Decl. ¶ 7); *Accord Sewell v. Bovis Lend Lease LMB, Inc.*, No. 09-6548, 2012 WL 1320124, at *14 (S.D.N.Y. April 20, 2012) ("Plaintiffs litigating cases in an employment context face the risk of subjecting themselves to adverse actions by their employer."). Accordingly, the Court finds that a service award is warranted here.

Moreover, the Court's Preliminary Approval Order examined the disparity in the Service Awards sought and found that Correa's narrower release of individual claims explained the lower Service Award she requested. (Preliminary Approval Order at 9–10.) Balnicki, on the other hand, released all his (unidentified) individual claims and is therefore seeking a higher Service Award. (*Id.*) Although the Court is satisfied that the scope of Balnicki's release justifies a higher Service Award, the requested $15,000 sum

is unreasonably high and does not fairly measure Balnicki's effort and risk. As noted, Balnicki spent 100–150 hours on this matter—less than the 250–300 hours Correa spent. And while Balnicki attended mediation and helped investigate the claims, he did not sit for deposition or undertake any specific reputational or monetary risk. Moreover, Class Members who did not sign severance agreements will, on average, receive only $2,000 in recovery and Balnicki's requested Service Award is more than seven times that. Accordingly, the Court reduces Balnicki's requested Service Award to $7,500.

For the foregoing reasons, Correa is awarded $2,500 and Balnicki is awarded $7,500.

## VII. CONCLUSION

The Court finds the settlement to be fair, adequate, and reasonable. Accordingly, the Court GRANTS the Motion for Final Approval of Class Action Settlement.

The Court also GRANTS IN PART the Motion for Award of Attorneys' Fees, Reimbursement of Expenses, and Service Awards. The Court awards $7,500 in administration costs to ILYM Group. The Court also awards Class Counsel $275,000 in attorneys' fees, which amounts to 25% of the Settlement Fund, and approves Class Counsel's request for reimbursement of litigation expenses in the amount of $9,676.46. Finally, the Court also approves payments of $2,500 to Correa and $7,500 to Balnicki in Service Awards.

Distribution of settlement payments to Class Members shall be made in accordance with the method outlined in the Settlement Agreement.

Class Counsel is ORDERED to file a proposed final judgment within five (5) days of entry of this Order.

**It is so ORDERED.**

DATED: June 14, 2021

_____
HON. JOSEPHINE L. STATON
UNITED STATES DISTRICT JUDGE